Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 06 2013, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JARRELL MARCELL BALLARD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1206-CR-319 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1104-FA-16

**February 6, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Jerrell Ballard ("Ballard") was convicted in Lake Superior Court of Class A felony robbery; Class A felony burglary; Class B felony robbery; Class C felony battery; and Class A misdemeanor battery. Ballard appeals his convictions arguing that the State failed to present sufficient evidence to prove that he committed the charged offenses.

We affirm.

## Facts and Procedural History

On April 9, 2011, Harry A. Thomas ("Thomas") of East Chicago, Indiana came downstairs after putting his children to bed. As he entered his kitchen, he saw a masked man in dark clothes. As he fought with the masked man, a second masked man in dark clothes grabbed him from behind. One of the assailants struck Thomas in the forehead with a gun. Thomas fell to the floor with the other assailant. Thomas then saw that the gun was pointed at his face. The man with the gun asked for money. From the floor, Thomas replied, "What money?" The man then shot Thomas. The single bullet went through both of his legs. Thomas then told his assailants that his money was upstairs.

The unarmed assailant went upstairs to look for the money, while the other stood guard over Thomas. The unarmed assailant could not find the money, so Thomas had to crawl up the stairs to get it. When he got to the top, he saw that the armed assailant was pointing the gun at Thomas's fifteen-year-old son. Then the armed assailant began to kick and "stomp" Thomas's son while demanding the money. Injured as he was by his gunshot wound, Thomas found his money and gave all of it, approximately $700 in cash, to his assailants. Thereupon, the assailants left the home with the cash and Thomas's cell phone. Thomas immediately used his son's cell phone to call the police, and officers from the East Chicago Police Department arrived at Thomas's home within minutes.

There was only one exit from the housing project where Thomas lived. While other officers were responding to Thomas's call, they were diverted by a car traveling at a high rate of speed in the opposite direction. The officers pursued and stopped Ballard and Anthony Cobb ("Cobb"), a few blocks from Thomas's home and near the entrance of the housing complex. The vehicle belonged to Ballard and Ballard was also its driver. Both men were wearing dark clothing. Both men were sweating, appeared nervous, and were breathing heavily. Police found a mask in Ballard's pockets, along with two cell phones. They also found approximately $700 in cash in Cobb's possession. There was a second mask sitting on the seat of the car. Ballard and Cobb were placed in separate squad cars. After securing Ballard in the police cruiser, Thomas's cell phone was found on the car floor next to Ballard's feet.

Although Ballard emphatically insisted he did not have a gun in his car, several bullets were found on the floor under the driver's seat during the stop. After Ballard's car was impounded in police custody and searched, a gun was found under the hood on the driver's side; the same side where Ballard was sitting when the car was initially stopped. The gun had in its six chambers, five shells and one spent casing. The bullets in the gun were consistent with the bullet that went through Thomas's legs. Shortly thereafter, Ballard was charged with (Count I) Class A felony robbery; (Count II) Class A felony burglary; (Count III) Class B felony robbery; (Count IV) Class C felony battery; and (Count V) Class A misdemeanor battery.

During his plea bargain, Cobb swore that Ballard was his accomplice during the robbery of the Thomas home. Cobb later repeated these accusations to a school resource officer at his high school. While he was serving time in prison under his plea agreement, Cobb recanted, stating that an unknown person named, "Dro" was his accomplice. Ballard, he said, was asleep a few houses away during the Thomas robbery. He also recanted during a deposition in preparation

3

for Ballard's trial. Cobb also testified at Ballard's trial, and again stated that Ballard was not involved.

On April 20, 2012, the jury found Ballard guilty on all counts and the trial court entered judgments of conviction for robbery, a Class A felony (Count I); burglary, a Class B felony (Count II); battery, a Class C felony (Count IV); and battery, a Class A misdemeanor (Count V). However, at sentencing, due to double jeopardy concerns, Ballard's conviction for Class B felony robbery was merged into his Class A felony robbery conviction and the Class B felony robbery conviction was vacated. Ballard was sentenced to thirty-two years on Count I, ten years on Count II, four years on Count IV; and one year on Count V, all concurrent but executed, for an aggregate term of thirty-two years in the Department of Correction. Ballard received credit for 331 days spent in confinement and 331 days of good time credit for a total of 662 days credit. Ballard now appeals.

**Discussion and Decision**

Ballard argues that Cobb recanted his testimony linking Ballard to the crimes and that therefore, the evidence is insufficient to convict Ballard. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

At trial, Cobb was a witness for Ballard; he was not a witness for the State. Police officers, a finger print analyst, a DNA analyst, and the victims, Thomas and his son, all testified for the State in order to make the case against Ballard. The State did not rely on Cobb's

4

testimony to prove their case, although Cobb's initial identification of Ballard as the perpetrator was used by the State to impeach his testimony at trial.

Ballard was the driver of a car that was speeding in the opposite direction of Thomas's home within minutes of Thomas's 911 call. The victim's cell phone was found in Ballard's pocket and later at his feet in the police cruiser. He was wearing black clothing and had a black mask in his pocket, consistent with the victims' testimony of what the intruders were wearing. The gun found under the hood of the car that Ballard was driving required ammunition consistent with the bullet that caused Thomas's wounds. The gun's six chambers held five bullets and one empty shell casing. The jury weighed Cobb's and Ballard's testimony against the testimony of the victims, responding and arresting police officers, and the State's finger print and DNA experts and convicted Ballard on all counts. Even considering Cobb's recantations, there is more than enough probative evidence and reasonable inference drawn from that evidence to allow a reasonable trier of fact to find Ballard guilty beyond a reasonable doubt.

Affirmed.

KIRSCH, J., and CRONE, J., concur.